IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEMETRIUS BLANKENSHIP,

                Plaintiff,

  v.

AMERICAN PHOENIX,

                Defendant.

OPINION and ORDER

17-cv-847-jdp

---

Pro se plaintiff Demetrius Blankenship is proceeding on claims that his former employer, defendant American Phoenix, fired him because he is African American and because he complained about race discrimination, in violation of Title VII. Blankenship also alleges that American Phoenix discriminated against him by making him start work early, delaying his pay, and disregarding his medical restrictions while treating white employees more favorably.

American Phoenix has filed a motion for summary judgment, Dkt. 21, which is ready for review. American Phoenix says that it fired Blankenship because he failed to comply with the company's attendance policy. It denies that it discriminated against Blankenship in any way. Also before the court is Blankenship's motion for leave to file a surreply brief, Dkt. 42, along with the proposed brief, Dkt. 43.

I will grant Blankenship's motion. Although Blankenship does not explain why he needed to file a surreply brief, the arguments he raises do not change the result of this case, so accepting the brief does not unfairly prejudice American Phoenix. I will also grant American Phoenix's motion for summary judgment. American Phoenix has shown that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). Blankenship simply failed to support his allegations of discrimination and retaliation with admissible evidence.

BACKGROUND

A. Parties

Defendant American Phoenix manufactures industrial rubber products in Eau Claire, Wisconsin. In February of 2014, American Phoenix hired Blankenship as an operator in the Whitewall Department, which produces tire rubber. Among other things, Blankenship was responsible for weighing rubber products, taking samples of the rubber for testing, marking items for shipping, and placing rubber products onto pallets. Blankenship is African American.

B. March 2015 incident

On March 17, 2015, Blankenship submitted a statement to the human resources department about an incident that had occurred earlier the same day. In the statement, Blankenship alleged that he heard a coworker say "hey n****r n****r" and "hey black boy." The following day, American Phoenix obtained statements from Fawna Eytchison (a coworker) and Kevin Gingras (Blankenship's supervisor), who were both present during the incident. Both Eytchison and Gingras identified the coworker as Chuck Steuding and agreed that he had used the "n word." But they also said that Steuding told Blankenship that Steuding "wasn't talking about" Blankenship. On March 19, Steuding submitted a statement in which he admitted to saying "n****r." On April 9, American Phoenix issued a written warning to Steuding, stating that he had used "unacceptable" and "offensive language," that the warning would be made "part of [his] record," and that "issuance of further warnings may subject [him] to further

disciplinary action including suspension or discharge." Dkt. 24-9. Since this incident, American Phoenix has not received any more complaints about Steuding using offensive language.

**C. Attendance policy**

American Phoenix's attendance policy is governed by a point system, which is described in the company's employee handbook. Employees who are tardy by less than an hour receive .5 attendance points. Clocking in one minute late is considered tardy. Employees receive a point for an unexcused absence. Leaving work early without permission qualifies as an unexcused absence.

The point system is applied over a rolling 12-month period. This means that attendance points that are more than 12 months old are not considered for disciplinary purposes.

Employees receive a written warning after accruing four points within a 12-month period, a second written warning after five points, and a third written warning after six points. Employees who accrue seven points within a 12-month period are placed on a one-day unpaid suspension. Employees are subject to termination if they accrue eight points.

In June 2016, American Phoenix informed Blankenship that he had accrued 6.5 attendance points. This was his third written warning. He signed an acknowledgment that "[t]he issuance of further warnings may subject [him] to further disciplinary action including suspension or discharge."

On August 11, 2016, Blankenship was placed on a one-day suspension after he accrued seven attendance points. On August 15, 2016, Gingras informed Blankenship that he was being terminated because he had accrued eight attendance points. A written notice listed dates between September 4, 2015, and August 11, 2016, in which Blankenship accumulated attendance points for tardiness and unexcused absences. Dkt. 28-5.

I will discuss more facts in the analysis section as they become relevant to the discussion.

ANALYSIS

A. **Scope of the claims**

Before addressing the merits of American Phoenix's motion for summary judgment, it is important to clarify the scope of the claims in this case. In the order screening Blankenship's complaint, I allowed Blankenship to proceed on the following claims:

(1) American Phoenix fired him because of his race and for making complaints about race discrimination, in violation of Title VII;

(2) American Phoenix discriminated against him because of his race by requiring him to begin work before his scheduled time without imposing the same requirement on similarly situated white employees, in violation of Title VII;

(3) American Phoenix discriminated against him because of his race by making him wait until the next pay period to correct underpayment errors in his paycheck while correcting errors immediately for similarly situated white employees, in violation of Title VII;

(4) American Phoenix discriminated against him because of his race by disregarding his medical restrictions while accommodating the medical restrictions of similarly situated white employees, in violation of Title VII.

Dkt. 4, at 9–10. Blankenship included other claims in his complaint, but I dismissed them for his failure to state a claim upon which relief may be granted. *Id*. Neither side sought reconsideration of the screening order. Blankenship later moved to amend his complaint to add more defendants, but I denied that motion as untimely and unfairly prejudicial. Dkt. 20.

For reasons it does not explain, American Phoenix assumes in its motion for summary judgment that all of the dismissed claims are still in the case and it seeks to dismiss them now. I have not considered any arguments from either party about claims that I already dismissed in the screening order.

For his part, Blankenship filed a new complaint several weeks after American Phoenix filed its motion for summary judgment. Dkt. 33. He did not seek leave to file a new complaint and he did not explain why he filed it. It appears to be virtually identical to his original complaint. Regardless of the purpose of the document, Blankenship's original complaint remains the operative pleading. The new complaint does not have any effect on the scope of the claims in this case, which is limited to the four claims enumerated above.

**B. Legal standard**

Title VII of the Civil Right Act of 1964 prohibits race discrimination in the terms and conditions of employment. 42 U.S.C. § 2000e-2(a). This includes termination and any other "materially adverse" employment action. *de la Rama v. Illinois Dept. of Human Services*, 541 F.3d 681, 685–86 (7th Cir. 2008). Title VII also prohibits employers from retaliating against employees for "oppos[ing]" race discrimination. 42 U.S.C. § 2000e-3(a). This provision applies to any action by an employer that would deter a "reasonable worker" from exercising his rights. *Chapin v. Fort Rohr Motors, Inc.*, 621 F.3d 673, 677–78 (7th Cir. 2010).

Both discrimination and retaliation claims are proven in much the same way. "[T]he appropriate question on summary judgment is simply: could a reasonable jury find based on all available evidence that a discriminatory or retaliatory motive caused [the plaintiff's] termination [or other adverse action]?" *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 569 (7th Cir. 2017). I will consider whether Blankenship has satisfied that standard as to each adverse action at issue.

**C. Termination**

There is no dispute that termination is a "materially adverse" employment action and would deter a reasonable worker from exercising his rights under Title VII. And I will assume

that Blankenship was "oppos[ing]" race discrimination within the meaning of § 2000e-3(a) when he complained about a coworker saying the word "n****r." *See Magyar v. Saint Joseph Regional Medical Center*, 544 F.3d 766, 771 (7th Cir. 2008) (complaint about harassment is protected under Title VII if employee had a "sincere and reasonable belief that she was opposing an unlawful practice.") (internal quotations omitted). The question is whether Blankenship has provided admissible evidence that American Phoenix fired him because he is an African American or because he complained about race discrimination.[1]

Blankenship does not deny that American Phoenix had a policy of terminating employees who accrue eight or more attendance points and he doesn't cite any evidence that other employees who accrued the same number or more points received less severe discipline. But he says that a jury could infer that American Phoenix's stated reason for firing him is a pretext for discrimination. He makes many arguments in his brief, but his challenges to American Phoenix's decision can be grouped into three categories: (1) alleged inaccuracies in American Phoenix's attendance records; (2) the timing of a change in the company's attendance policy; and (3) the company's response to the March 2015 incident.

---

[1] In his brief, Blankenship quotes an exchange between him and defense counsel during Blankenship's deposition in which counsel states that Blankenship cannot raise a retaliation claim because he did not include such a claim in his charge with the Equal Employment Opportunity Commission. Dkt. 43, at 11 (citing Dkt. 28 at 39:16–40:3). But an employee's failure to exhaust his administrative remedies with the EEOC is an affirmative defense. *Salas v. Wisconsin Dept. of Corrections*, 493 F.3d 913, 927 (7th Cir. 2007). Because American Phoenix doesn't raise this issue in its brief, I have not considered it.

### 1. Challenges to attendance records

Blankenship devotes most of his briefs to attacking the accuracy of American Phoenix's attendance records and the way it "counted" his attendance points. None of these challenges raise a genuine issue of material fact.

#### a. Irrelevant records

Many of Blankenship's challenges relate to attendance records that are not relevant to his claims. He says that many of the records from 2014 and early 2015 are inaccurate for various reasons, but it is undisputed that American Phoenix relied only on Blankenship's absences after September 2015. Under American Phoenix's attendance policy, "points" accrued for tardiness or an unapproved absence expire after one year. Blankenship cites no evidence that any absences that occurred before September 2015 played any role in his termination.

Blankenship also says that American Phoenix's records fail to reflect that he often left 15 to 30 minutes early with permission from his supervisor when work was slow. This is irrelevant because his termination notice did not include any attendance points for leaving 15 to 30 minutes early. *See* Dkt. 28-5. Blankenship doesn't cite evidence showing that he was penalized for leaving early with permission.

#### b. Number of attendance points that Blankenship accrued

Blankenship repeatedly alleges that American Phoenix's records actually show that he had accumulated *more* than eight attendance points at the time he was fired. *E.g.*, Dkt. 45, at 9–10, 25 and Dkt. 43, at 6. Blankenship doesn't clearly explain why he believes that would be relevant to his claim. But his position seems to be that any mistakes in American Phoenix's calculations are proof of discrimination, regardless whether the mistake favored or disfavored him. Dkt. 45, at 10 ("Mendacity is mendacity regardless of whether the reason for the

7

termination falls short of the required attendance points is in excess of the required attendance points.").[2]

Blankenship misunderstands the law governing his claims. A plaintiff can support a discrimination or retaliation claim with evidence that the employer is lying about its reasons for firing him. *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 487 (7th Cir. 2015). The reasoning behind this is straightforward: if the employer's stated reason is a pretext, it suggests that the employer may be trying to cover up a reason that is prohibited by law. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000). But a mistake is not a lie. *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015) ("Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action.") (internal quotation marks omitted). And an alleged discrepancy in the record about the precise number of Blankenship's absences does not undermine the reason American Phoenix gave for terminating him. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.,* 811 F.3d 866, 881 82 (7th Cir. 2016) (inconsistencies about the details of the decision-making process leading up to termination process not probative of discriminatory intent).

It is important to remember that the ultimate question is whether a reasonable jury could find American Phoenix discriminated against Blankenship because of his race or because he complained about discrimination. A mistaken belief that Blankenship had fewer absences than what the records reflect would not support either claim. If anything, it would suggest that

---

[2] Docket No. 45 is a revised version of Blankenship's opposition brief. Blankenship did not seek leave to file the new brief and American Phoenix did not have an opportunity to respond to it. But I have considered it because it doesn't change the outcome of the case.

American Phoenix was giving Blankenship more chances than what he was entitled to under company policy.

### c. Alleged absence on September 29, 2015

Blankenship did not deny in his deposition or declaration that he was in fact late or absent on all the days identified in his notice of termination. But in his briefs and responses to American Phoenix's proposed findings of fact, he alleges that he did not leave work early on September 29, 2015, as reflected in his termination notice and American Phoenix's attendance records.[3] But briefs and other unsworn filings are not evidence. *See Mitze v. Colvin,* 782 F.3d 879, 882 (7th Cir. 2015).

Even if I assume that Blankenship didn't leave early on September 29, a genuine dispute about that fact would not be sufficient to defeat American Phoenix's motion for summary judgment. Before firing Blankenship, American Phoenix informed Blankenship no fewer than three times that he received an attendance point for an unexcused absence on September 29, *see* Dkt. 24-2, but he does not allege that he ever challenged the accuracy of the records before now. Even in his deposition, when defense counsel asked him about the accuracy of the record related to September 29 specifically, Blankenship didn't challenge the record's accuracy. Dkt. 28, at 33:21–35:3. And even now, he doesn't cite any evidence or even allege that Kevin Gingras (the supervisor who fired him) was responsible for maintaining time records, would

---

[3] Blankenship supports this allegation in part by observing that he received a point for an unexcused absence on September 29 as well as half a point for being tardy. He says that he could have not have accrued both points because "he could not have both been at work and not at work." Dkt. 45, at 12. But it is undisputed that leaving work early without permission qualifies as an unexcused absence under American Phoenix's attendance policy. Dkt. 40, ¶ 19. American Phoenix's time records show that he came in late and left approximately four hours early on September 29. Dkt. 24-3, at 17.

9

have the ability to manipulate them, or otherwise had any reason to believe that the records were inaccurate when he fired Blankenship. So even if I accept as true Blankenship's unsworn statement that he did not leave work early on September 29, no reasonable jury could find that American Phoenix did not honestly believe that he did. *See Arrigo v. Link*, 836 F.3d 787, 796 (7th Cir. 2016) ("The pretext inquiry asks not whether an employer correctly believed an employee was performing poorly, but rather whether the employer honestly believed so.").

2. **American Phoenix's change in punctuality standards**

Blankenship says that American Phoenix had a "practice" of giving employees a 15-minute "grace period" when they started their shift, meaning that they would not receive an attendance point if they were fewer than 15 minutes late. Dkt. 45, at 26. He says that the practice changed when he was "actively complaining" about race discrimination and the company began giving him attendance points for tardiness of only a few minutes. *Id.* at 34. He also says that "white employees often took advantage of the grace period while Blankenship was not allowed to also take advantage of the grace period." *Id.* at 35. From this, Blankenship says that a jury could reasonably infer that American Phoenix discriminated and retaliated against him. And because so many of his attendance points from September 2015 to August 2016 were related to being a few minutes late, if American Phoenix had not changed its practice, he would not have accumulated enough points to qualify for termination.

This argument overlaps substantially with Blankenship's claim that American Phoenix discriminated against him by requiring him to begin work before his scheduled time, so I will consider these claims together. Blankenship's summary judgment materials make it clear that he is not actually alleging that he was required to start work early. Rather, he is alleging that

he was required to start earlier than before because American Phoenix no longer gave him a grace period.

American Phoenix does not deny that it changed its punctuality standards in 2015. The question is whether it did so to retaliate against Blankenship or applied its standard in a discriminatory fashion.

As for discrimination, Blankenship doesn't cite any evidence to support the allegation that white employees continued to get a grace period while he didn't. Instead, he alleges that the new practice was imposed only in his department and his department was the only department that included African Americans. But that allegation is not probative because Blankenship doesn't provide any foundation for it. In other words, Blankenship doesn't explain how he knows that the new practice applied only to his department. He doesn't cite any written policies, attendance records, or testimony of someone with personal knowledge. *See Watson v. Lithonia Lighting,* 304 F.3d 749 (7th Cir. 2002) (plaintiff's testimony not admissible when she did not explain how she learned about the subject of her testimony and her personal knowledge could not otherwise be reasonably inferred).

In any event, even if it is true that the new practice applied only to Blankenship's department, the fact that other departments did not adopt a stricter punctuality standard is not in itself proof of discrimination. It may simply be that the supervisor of Blankenship's department decided to make punctuality a higher priority. Because Blankenship doesn't provide any evidence of the reasons for the decision or even who made it, no reasonable jury could infer that any differences in the practices of the departments are the result of discriminatory intent.

To make up for his lack of evidence, Blankenship asks the court to compel American Phoenix to produce a "random sampling" of attendance records of white employees. Dkt. 45, at 35. But it is too late for that. At summary judgment, the plaintiff must "put up or shut up" and "show what evidence [he] has that would convince a trier of fact to accept [his] version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). If Blankenship believed that attendance records of other employees could help him prove his claims, he should have asked for them in discovery and then filed a motion to compel if American Phoenix refused to produce them. In fact, I explained to Blankenship in a previous order how to file a motion to compel and described the information he should include in such a motion. Dkt. 20, at 2.

In his surreply brief, Dkt. 43, at 27, Blankenship blames the court because he could not conduct discovery while he was waiting for his complaint to be screened in accordance with 28 U.S.C. § 1915(e)(2). But no party may conduct discovery before the complaint is served. *See* Fed. R. Civ. P. 26(d)(1). And Blankenship was not prejudiced by any delay in screening because the time between filing the complaint and screening it has no bearing on the time the parties may conduct discovery. In this case, there were nearly eight months between the preliminary pretrial conference (when discovery began) and the filing of American Phoenix's summary judgment motion.

Blankenship also blames American Phoenix because Blankenship agreed to its request to postpone discovery for a few months while they attempted to negotiate a settlement. Dkt. 43, at 27. But the parties did not inform the court of this agreement, which Blankenship could have terminated whenever he wished. And when negotiations failed, Blankenship did not ask the court for a change in the schedule. Even after the stay ended, Blankenship still had

several months to submit discovery requests. He does not explain why he failed to seek this information then.

As for retaliation, Blankenship points to what he says is suspicious timing, which can support a retaliation claim in combination with other evidence. *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014). Specifically, he says that he was complaining about discrimination in July 2015, which is when American Phoenix first began giving him attendance points for being late. Dkt. 24-3, at 14.

Blankenship's retaliation claim is undermined by his admission that the stricter punctuality standards applied not just to him, but to others in his department. This makes it harder for Blankenship to allege plausibly that American Phoenix made the change to specifically target him for complaining about discrimination. Regardless, Blankenship doesn't cite any evidence to support the statement in his brief that he was complaining about retaliation in July 2015. He cites his complaint, but the complaint isn't verified so it's not evidence. *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012). But even it were, the only relevant allegation in his complaint relates to the incident involving another employee using the "n word." Dkt. 1, ¶¶ 7–9. He complained about that incident on March 17, 2015, Dkt. 28-8, the same day the incident occurred. He doesn't point to any other complaints he made about that incident or any other incident involving race discrimination.

As Blankenship acknowledges in his brief, he was tardy more than a dozen times between March and July 2015 without receiving attendance points. Under those circumstances, it would not be reasonable to infer that American Phoenix changed its punctuality standards to retaliate against Blankenship for a complaint he made in March 2015. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) (four months between

13

complaint and termination insufficient on its own to establish causal connection); *Filipovic v. K&R Express Sys., Inc.*, 176 F.3d 390, 399 (7th Cir. 1999) (no causal connection when gap is four months and plaintiff "has not presented any direct evidence of causal connection"). *Hughes v. Derwinski*, 967 F.2d 1168 (7th Cir. 1992) (four months between the employee's protected activity and his discipline could not support an inference that the two events were related).

### 3. American Phoenix's response to March 2015 incident

Blankenship says that American Phoenix's handling of his complaint about the coworker's use of the "n word" is evidence of discriminatory intent because it "implies that American Phoenix tolerated a culture or atmosphere of racial bigotry." Dkt. 43, at 22. But Blankenship doesn't cite any facts that support that assertion. To begin with, Blankenship does not dispute the statements of the other witnesses that the coworker did not intend to use the word as an epithet against Blankenship. More important, after Blankenship reported the incident, American Phoenix conducted a prompt investigation, issued a disciplinary warning, and advised the coworker that he could be subject to further discipline, including termination, if the conduct continued. Blankenship seems to believe that American Phoenix should have disciplined the coworker more harshly, but that question is outside the scope of this case. Nothing about American Phoenix's response to this incident supports a finding that American Phoenix held racially discriminatory beliefs or fired Blankenship because of his race.

### D. Delay in correcting paycheck errors

Blankenship says that American Phoenix also discriminated against him because of his race by making him, but not white employees, wait until the next pay period to correct underpayment errors in his paycheck. American Phoenix challenges this claim on the ground that it doesn't qualify as a materially adverse employment action. Neither side cites any case

law directly on point, but the general question is whether Blankenship suffered a "significant change in [his] employment status." *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000) (internal quotation marks omitted). Adverse employment actions do not include "the many day-to-day travails and disappointments that, although frustrating, are not so central to the employment relation that they amount to discriminatory terms and conditions." *Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006).

In his deposition, Blankenship was unable to identify when or how often he was underpaid. Dkt. 28, at 89:2–90:6. When asked how much was improperly deducted, Blankenship said that it was "less than a hundred dollars." *Id.* at 89:24–25. He acknowledged that all errors were corrected in his next paycheck. *Id.* at 90:10–12. And he does not allege that he suffered any financial hardship while he was waiting for American Phoenix to correct the error. Under these circumstances, it is difficult to see how the alleged conduct qualifies as a "significant change" in Blankenship's employment.

But even if I assume that the delay in receiving correct pay was a significant change, this claim still fails as a matter of law for two reasons. First, Blankenship's only evidence in support of his allegation that American Phoenix corrected white employees' paychecks more promptly is his own testimony that white coworkers told him that the human resources department corrected their paychecks the same day when they were underpaid. Dkt. 28, at 93:22–99:11. But that testimony is hearsay, so it's inadmissible. *See Stephens v. Erickson*, 569 F.3d 779, 793–94 (7th Cir. 2009) (coworker testimony doesn't qualify for hearsay exception in lawsuit against employer if testimony doesn't relate to job duties).

Second, an employer's more favorable treatment of another worker is not evidence of discrimination unless the plaintiff is "similarly situated" to that other worker. *Eaton v. Indiana*

*Dept. of Corr.*, 657 F.3d 551, 559 (7th Cir. 2011). In this case, Blankenship hasn't shown that the other employers are similarly situated to him because he doesn't know whether the other employees dealt with a different person in the human resources department or whether their paycheck included an error that could be corrected more quickly. Without this information, no reasonable jury could infer discriminatory intent. *See Ellis v. United Parcel Service, Inc.*, 523 F.3d 823, 826–27 (7th Cir. 2008) ("Different decisionmakers may rely on different factors when deciding whether, and how severely, to discipline an employee. So, to be similarly situated, [an employee] must have been treated more favorably by the same decisionmaker that fired the [plaintiff]."); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (employees are not similarly situated unless they are "directly comparable . . . in all material respects").

**E. Medical restrictions**

Blankenship says that American Phoenix discriminated against him because of his race by disregarding his medical restrictions while accommodating the medical restrictions of white employees. Specifically, Blankenship say that Gingras made him "pull treads" for part of the day despite a doctor's note that restricted him to "light duty" but that Gingras did comply with "light duty" restrictions of two white employees (James Hoppe and Josh Adamaski) in the department.[4]

This claim also fails because Blankenship has failed to show that the other employees were similarly situated to him. As for the employees' injuries, Blankenship says that he doesn't

---

[4] Pulling and throwing treads involves pulling pieces of rubber tire apart and the throwing them onto a conveyor belt. Dkt. 40, ¶ 65.

remember what his injury was or what caused it.[5] He just says that his shoulder was in pain. Dkt. 28, at 62:15–64:7. He also admitted that he doesn't know what the other employees' injuries were, except that Hoppe "had a sling or cast on his arm" and Adamski had "something . . . wrong with his back." *Id.* at 71:10–11 and 74:4–7.

As for the notice that each employee provided Gingras, Blankenship's note simply says "light duties," Dkt. 28-7; it does not describe Blankenship's particular limitations. And Blankenship doesn't allege that he ever told Gingras what his particular injury was or that any tasks he was assigned were incompatible with his doctor's note. In contrast, Hoppe's note lists all the things he can and can't do. Dkt. 24-4. Blankenship doesn't know whether Adamski had a note or what Adamski told Gingras about his injury.[6]

As for the type of work the employees did, Blankenship admits that he doesn't even know whether Hoppe and Adamski were required to pull treads as he was. Dkt. 28, at 77:18–78:9. "With such significant gaps in the evidentiary record, [Blankenship] plainly hasn't carried his burden of establishing a prima facie case of discrimination." *See Smith v. Chicago Transit Auth.*, 806 F.3d 900, 907 (7th Cir. 2015).

**F. Conclusion**

It is clear from Blankenship's filings that he believes that American Phoenix treated him unfairly in many ways. But a plaintiff's own beliefs are not enough to defeat a motion for

---

[5] In his brief, Blankenship says that he was injured at work, Dkt. 45, at 4, but in his deposition he said that he was hurt at home, Dkt. 28, at 63:19–64:2.

[6] Neither side submitted a note from Adamski. In his sur-reply brief, Blankenship says that he asked American Phoenix to produce the note from Adamski's doctor, but he does not cite a particular discovery request. In any case, Blankenship didn't file a motion to compel the production of this information.

summary judgment. The plaintiff must come forward with enough admissible evidence to permit a reasonable jury to find not only that the employer acted unfairly, but also that it discriminated or retaliated against him. Because Blankenship has not provided that type of evidence, I will grant American Phoenix's motion for summary judgment.

ORDER

IT IS ORDERED that:

1. Demetrius Blankenship's motion for leave to file a sur-reply brief, Dkt. 42, is GRANTED.

2. Defendant American Phoenix's motion for summary judgment, Dkt. 21, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of American Phoenix and close this case.

Entered March 14, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge